Norman HINES and Frankie Hines, Plaintiffs,

v.

AC AND S, INC., et al., Defendants.

No. Civ.A. 3:00–CV–2637.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 24, 2001.

Ashley L. Watkins, Waters & Kraus, Dallas TX, for Plaintiffs.

Michael John Ramirez, Dunn Kacal Adams Pappas & Law, Dallas, TX, Ronald Walker, Walker Keeling & Carroll, Victoria, TX, Lewis Charles Miltenberger, Bourland Kirkman Seidler & Evans, Fort Worth, TX, Gary D. Elliston, DeHay & Elliston, Dallas, TX, Mary Lou Mauro, Galloway Johnson Tompkins Burr & Smith, Houston, TX, Tom Foley, Foley & Colley, Tyler, TX, James M. Harris, Jr., Harris Lively & Duesler, Beaumony, TX, James Michael Riley, Coats Rose Yale Ryman & Lee, Houston, TX, William C. 'Trey' Dowdy, III, Strasburger & Price, DAllas, TX, Raymond Paul Harris, Jr., Whittenburg Whittenburg & Schachter, Dallas, TX, Mel D. Bailey, DeHay & Elliston, Dallas, TX, Robert Wilkinson, Dogan & Wilkinson, Pascagoula, MS, Robert H. Nunnally, Jr., Cantilo Bennett & Wisener, Dallas, TX, Todd Wade, Brown McCarroll Oaks Hartline, Houston, TX, John L. Hill, Jr., Locke Liddell & Sapp, Houston, TX, David M. Taylor, Thompson Coe Cousins & Irons, Dallas, TX, Dale G. Markland, Vinson & Elkins, Dallas, TX, J. Jeffery Mundy, Brobeck Phleger & Harrison, Austin, TX, Randy Burns, Baker Botts, Dallas, TX, Thomas F. Dougall, Bowers Orr & Dougall, Columbia, SC, Todd Suddleston, Eric D. Wewers, DeHay & Elliston, Dallas, TX, William Gallerston, Brown Sims, Houston, TX, Robert Bass, Forman Perry Watkins Krutz & Tardy, Dallas, TX, Gregory Michael Sullivan, Mayor Day Caldwell & Keeton, Houston, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court are Defendants' Notice of Removal, filed December 4, 2000; Defendants' Amended Notice of Removal, filed December 6, 2000; Defendants' Supplementary Notice of Removal, filed December 14, 2000; Plaintiffs' Responses

thereto; and Plaintiffs' Motion to Remand, filed December 7, 2000. Parties have also submitted supplementary briefing on issues raised in a hearing before this Court on December 8, 2000. Having considered the motions, briefs, and the applicable law, this Court is of the opinion that the Plaintiffs' Motion to Remand should be **GRANTED**, and this matter returned to the 354th District Court of Texas.

## FACTUAL BACKGROUND

Plaintiffs originally filed this asbestos class action lawsuit in the 354th Judicial District Court of Hunt County, Texas. After the presiding judge severed the other class plaintiffs, only Norman and Frankie Hines remained as active plaintiffs. On July 26, 2000, Plaintiff Norman Hines served Defendants with his answers to master discovery, in which he listed his relevant work history, including several years spent working at the Operation Saline Water Plant in Wrightsville, North Carolina. Plaintiff Norman Hines served Defendants with Supplemental Answers to Master Discovery on November 6, 2000. On December 1, Defendant A.P. Green and Defendant Harbison filed a notice of removal under federal enclave jurisdiction since, the Defendants claimed, the Operation Saline Water Plant ("OSWP") was a federal enclave at the time of the alleged exposure.

On December 8, 2000, this Court held an emergency hearing to determine which of the defendants had consented to removal and to gather more information on the federal enclave issue. At the hearing, lead removal Defendant A.P. Green represented that all the Defendants, save any insolvent or nominal ones, consented to removal. This representation was not accurate. Four days after the hearing, on December 12, 2000, Defendants filed four additional removal consents. That same day, Defendants also received the transcript from the deposition of William Sebrell, a coworker of Plaintiff Norman Hines. On December

14, 2000, Defendants filed their Second Amended Notice of Removal.

## ANALYSIS

Two questions are before this Court, either of which suffices to determine if remand is proper: 1) did the exposure occur on a federal enclave; and 2) was the removal timely? This Court will focus on the question of timing.

■ Plaintiffs make a straightforward argument: Defendants collectively had notice of the factual basis of the federal enclave issue when they received the July 26, 2000 discovery answers (the "Discovery Answers"); the removal period ended 30 days later, on August 26, 2000. Defendants repeatedly try to push the removal period forward in time. Defendant AP Green, in its original notice of removal, states that it only became aware of the federal enclave issue when it received the supplemental answers to Master Discovery (the "Supplemental Answers"), on or around November 6, 2000. By this reckoning, the removal period ended on December 6, 2000.

During the court hearing, Defendant A.P. Green tried, yet again, to move the hands of the clock forward, then suggesting that they had still not received any 'other paper' from Plaintiffs from which one could ascertain that the case was removable. Defendants finally proposed that the removal period began on December 12, 2000, with the receipt of William Sebrell's deposition transcript (the "Sebrell transcript"). Notwithstanding the fact that they had filed a removal on December 1 and argued in a hearing on December 8, Defendants claimed that the removal period had only just begun.

The timing of a removal is governed by 28 U.S.C. § 1446(b), which provides that "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be

ascertained that the case is one which is or has become removable. . . ." The last consents to removal were received on December 12, 2000. Under § 1446(b), this means that removal is timely only if Defendant first received facts permitting it to ascertain that the case was removable no earlier than November 12, 2000.[1]

### A. Defendants' Claims

Defendants make the following claims: 1) no materials, prior to the Sebrell transcript, constitute "other paper"; 2) nothing prior to the Sebrell transcript was a voluntary act by the Plaintiffs, such that the removal period should begin; 3) all the facts for removal, prior to those established in the Sebrell transcript, existed only within Defendants' subjective knowledge, and cannot start the removal period; and 4) whether a lawsuit is removable must be facially apparent from the "other paper." This Court will deal with the claims in that given order.

### 1. Other paper

■ The first question before this Court is which, if any, of the materials or statements provided by Plaintiffs to Defendants constitutes "other paper" under § 1446(b). Courts in this circuit have construed "other paper" to include: answers to interrogatories; see *Leboeuf v. Texaco,* 9 F.Supp.2d 661, 665 (E.D.La.1998); responses to requests for admissions; see *Johnson v. Dillard Dept. Stores, Inc.,* 836 F.Supp. 390, 391 (N.D.Tex.1993); deposition testimony; see *Trotter v. Steadman Motors, Inc.,* 47 F.Supp.2d 791, 793 (S.D.Miss.1999); and even product identification documents given in discovery; see *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1102 (D.Md.1993) (reconsideration denied).

Neither party argues that this matter was removable upon the initial pleadings.

However, Defendant dubiously contends that the first and only "other paper" it has received was the Sebrell transcript. Defendants' analysis strangely omits potential "other papers" that were delivered prior to the Sebrell transcript: the Discovery Answers and the Supplementary Answers. Defendant AP Green does not deny that it, or any other Defendant, received these documents; nor does it provide any colorable argument as to why these documents are not "other papers." This Court finds that either set of discovery answers fulfills the "other papers" requirement of § 1446(b).

### 2. Voluntary act

■ Next, Defendants cite *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996), for the proposition that facts bearing upon removal cannot arise from the Defendants' subjective knowledge. This Court finds that precedent inapplicable. In *S.W.S. Erectors,* the plaintiff's initial state court pleading only alleged damages in excess of that court's minimum jurisdictional limits. Over the telephone, defendant's counsel learned from plaintiff's counsel that the damages actually exceeded $100,000. He memorialized the conversation in an affidavit and, over thirty days later, filed a notice of removal on diversity grounds. The plaintiff argued that the removal was untimely, as the creation of the affidavit should have triggered the removal period. The defendant responded that an affidavit based upon its own subjective knowledge could not initiate the removal period. The district court did not reach the question, but the Fifth Circuit, upon review, sided with the defendant, holding that the " 'other paper' conversion requires a *voluntary act by the plaintiff.*" *Id.* at 494 (emphasis in original).

---

1. It is this Court's opinion that the failure to timely get the required consents from all defendants is what is forcing the Defendants to take the tortured positions being argued in this case. The Defendants probably believed that they were put on notice on November 6, 2000, but waited until a week before the scheduled state court jury trial to remove and simply forgot or were unable to get the required consents from all defendants in a timely fashion, as the statute requires.

Having held that both sets of discovery answers satisfy the "other paper" requirement, the next question to ask is whether either of these "other papers" is not a "voluntary act" by Plaintiffs. Defendants' second amended notice of removal contends that the deposition is voluntary. This claim does not illuminate how the Discovery Answers and Supplemental Answers are 'involuntary,'[2] so as to preclude them from starting the removal period. Defendants uncontroversially argue that the Sebrell transcript was a voluntary act. However, their implication by omission that the discovery answers were involuntary is entirely unconvincing. Even less plausible is the claim that the factual statement placing exposure at the OSWP is insufficient to trigger the removal period. The Discovery Answers and the Supplemental Answers are both voluntary acts by the Plaintiffs, notwithstanding the limited relevance of that standard to federal enclave jurisdiction. In both sets of documents, Plaintiffs have expressly stated the factual basis for federal enclave jurisdiction.

### 3. Subjective knowledge

 Defendants next argue that prior to the Sebrell transcript, any awareness that the exposure occurred on a federal enclave was only subjective knowledge. Once again citing *S.W.S. Erectors, Inc.*, Defendants contend that the removal clock could not begin so long as the federal enclave issue remained subjective knowledge. This assertion is grounded upon the supposed principle that Defendants have no duty to investigate possible grounds for removal and may rightfully await disclosure of removability by the Plaintiffs.

This Court also finds the "subjective knowledge" language of *S.W.S. Erectors*

inapplicable to the instant case. A careful reading of the entire opinion demonstrates that *S.W.S.* does not apply. That court was concerned that defendants might selectively provide removal facts that, in actuality, plaintiffs had neither conceded nor alleged.[3] Also, the *S.W.S.* court was faced with a situation in which the plaintiff selectively withheld information on the actual claim for damages, and then attempted to defeat removal by calling it untimely. The instant facts render *S.W.S.* distinguishable; nowhere do Defendants assert that Plaintiffs have attempted to obscure the location of their exposure.

Defendants vehemently oppose the notion that they should be placed under any obligation to investigate possible bases for removal. That position, while self-serving, is understandable. On the other hand, Defendants' transparent act of selective amnesia is unacceptable. The first notice of removal asserts that the exposure took place on a federal enclave. Incredibly, over the span of just two weeks, Defendants go from fully conscious to half senile, claiming that they know nothing until it is listed in a deposition transcript. Defendants fail to see the distinction between subjective and inconvenient knowledge. Here, there neither is nor was any doubt as to where Plaintiff Norman Hines supposedly was exposed to asbestos-containing materials. Nothing is left to Defendants' speculation, surmise, or subjective hunch.

A close look at the relevant portions of the Sebrell transcript reveals the weakness of Defendants' claims. William Sebrell merely affirms leading questions asked by the Defendants' counsel. Save for a different voice on the recording and a different name on the transcript, this situation is analogous to having Defendants

---

**2.** It might be argued that discovery sanctions make the responses compelled, and not wholly voluntary. Still, that same argument would also preclude deposition testimony from being 'voluntary.'

**3.** A further limitation upon the applicability of *S.W.S. Erectors* lies in the fact that there,

removal was based partially upon the amount in controversy—which Plaintiffs can increase or reduce according to their pleadings. Here, the factual basis lies in locale—and barring considerable advances in technology, Plaintiffs are unable to modify where the exposure allegedly occurred.

simply submit the desired information in affidavit form. One wonders, given the scant answers and pinpoint questioning, where the facts bearing upon removal originated. Which came first, the questioning chicken or the answering egg? While there is no formal problem with this rote Q & A session, a problem arises when this transcript is juxtaposed with Defendants' assertion that prior to receiving the transcript, they only had subjective knowledge that the matter was removable. This claim is nonsense. Defendants knew the name of the work site, they knew enough to remove the matter, and they knew enough to argue in a hearing. The threshold of objectivity they demand is not available in a human courtroom, for if a judge rules that the OSWP is a federal enclave, what necessarily renders that ruling "objectively" correct?

While it is true that the Sebrell transcript gives information that supports removal, it is also true that the Defendants, at least some of them, already knew this information from the previous paper discovery. Defendants push the zen-like paradox that the answers objectify the knowledge, while the fact-laden, probing questions which compel the answers are subjective, and therefore, do not start the removal clock. The reading of the transcript would proceed differently if the witness himself disclosed that the worksite was a federal enclave, but one cannot avoid the glaring fact that this deposition was a "straw man"—scripted to reduce subjective knowledge into written, facially apparent and, most significantly, dilatory form. Defendants ask this Court to effectively require plaintiffs, present and future, not only to relate the facts honestly, but also to notify the adversary of why those facts are legally significant, or risk an eleventh-hour, surprise removal on the eve of trial. Not only would this be a poor reading of minimally relevant precedents, it would make rotten policy.

### 4. Facially apparent

■ Defendants pin their final hopes on the argument that the grounds for removal must be "facially apparent" in either the initial pleadings or in the other papers. That claim is uncontroversial in the Fifth Circuit. A close review of the precedents, however, reveals that the "facially apparent" standard has been applied exclusively in dealing with jurisdictional limits for removal under diversity jurisdiction. *See Gebbia v. Wal–Mart Stores,* 233 F.3d 880 (5th Cir.2000); *Simon v. Wal–Mart Stores,* 193 F.3d 848, 850 (5th Cir.1999). The "facially apparent" requirement makes sense as a deterrent for hiding the amount in controversy, but it has little relevance and application in this rare instance of federal enclave jurisdiction.

■ Unlike the usual "facially apparent" case, the facts here were always clear. Plaintiffs have not hidden, disguised, or obscured the site of his exposure. The relative rarity of federal enclave jurisdiction may have clouded the legal significance of those facts, but that alone does not justify indefinitely suspending the removal period. Defendants' argument that Plaintiffs have a duty to disclose possible federal enclave jurisdiction is wrong. Nothing requires Plaintiffs to take the step of adding a footnote, parenthetical, or caveat stating that the exposure locale happened to be a federal enclave. The adversarial system, while sometimes collegial, is never that collegial. Defendants have not pointed this Court to any cases which counsel towards reallocating the existing burdens between the parties. This Court finds that so long as Plaintiffs have honestly stated the specific locale of their exposure, the "facially apparent" standard is inapplicable to removal under federal enclave jurisdiction. The price of removal under this obscure jurisdictional basis may simply be that of diligent investigation. *Cf. Delaney v. Viking Freight, Inc.,* 41 F.Supp.2d 672, 676 (E.D.Tex.1999) (holding that removal period began when defendant was able to detect fraudulent joinder, even without any additional information supplied by the plaintiff). This Court

finds no reason, such as fraud by the Plaintiffs, to intervene and twice reset the removal period. Here, there was no fraud whatsoever.

 Against a motion for remand, the removing party bears the burden of showing that removal jurisdiction is justified. *Triggs v. John Crump Toyota,* 154 F.3d 1284, 1287 (11th Cir.1998). All doubts over the propriety of a removal are to be resolved in favor of a remand. *See Coyne v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999); *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999). It is now almost five months past the end of the original removal period. In all fairness to both parties, this Court sees neither the need nor the policy purpose in allowing Defendants to indefinitely stay the date of removal. It is patently obvious that this unwarranted removal has cost both parties additional time and unnecessary effort. This Court has also, regrettably, killed several trees in explaining the obvious (and already known) chronology and meanings of words. To permit this ill-timed removal to go forward would create an incentive for all future Defendants to profess their ignorance of the meaning of stated facts, hoping that at a later, more advantageous time, they can establish "other papers" and "voluntary Plaintiff acts" that give rise to what they consider "objective knowledge" that a matter is removable. Unfortunately for Defendants, this, and all courts, operate in the realm of federal civil procedure, not modern physics or analytical philosophy. Here, Defendants do not bear the burden of investigating intentionally obscured facts, but they also lack the liberty of selectively forgetting things already and admittedly known. Were this not the case, not only the removal rules, but also numerous other rules governing service, habeas, discovery, and appeal would lose all their stability.

This Court finds that the thirty day removal period for this matter began on July 26, 2000, after Defendants, including Defendant A.P. Green, received Discovery Answers disclosing the exposure at the OSWP. Even had this Court accepted Defendants' first removal, in response to Supplemental Answers served on November 6, 2000, removal would still be untimely. The final four consents were filed on December 12, 2000, six days after the deadline in that hypothetical case. The claim that the removal period did not begin until December 14, 2000, is not worth the toner with which it was printed. If that were the date that the right of removal accrued, then Defendants' should be subject to Rule 11 sanctions for filing multiple and premature notices of removal, without first having diligently investigated their basis in fact. As this removal was not effected in a timely manner, this Court finds that Plaintiffs' Motion to Remand should be, and hereby is, **GRANTED.** This case is returned to the 354th Judicial District Court of Hunt County, Texas.

**IT IS SO ORDERED.**